IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CECIL BROOKINS, EX-5514,       )
      Petitioner,           )
                              )
         v.             )  2:09-cv-1339
                              )
RANDALL BRITTON, et al.,       )
      Respondents.        )

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of Cecil Brookins for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

Cecil Brookins, an inmate at the State Correctional Institution at Houtzdale has presented a petition for a writ of habeas corpus which he has been granted leave to prosecute in forma pauperis.

Brookins is presently serving a forty-three and half to eighty-seven year sentence imposed following his conviction by a jury of three counts of attempted homicide; aggravated assault, uniform firearm violation and possessing an instrument of crime at Nos. CC200205563 and CC 200205564 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence

was imposed on June 27, 2003.[1]

An appeal was taken to the Pennsylvania Superior Court in which the issues presented

were:

> 1. Whether it was reversible error for the trial court to permit the Commonwealth
> to impeach the credibility of the appellant/defendant's testimony that he was
> unaware he was the subject of an arrest warrant prior to his arrest, solely on the
> basis that approximately 20 months prior to the arrest he had been twice
> previously convicted of crimes and sentenced to prison.
>
> 2. Whether the trial court committed reversible error when it instructed the jury in
> its charge that it could accept the above evidence of Mr. Brookins' prior crimes
> when it was considering his credibility as a trial witness.[2]

On June 24, 2005, the judgment was affirmed.[3]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which

the issue presented was:

> Whether the trial court erred in admitting evidence of two prior convictions by
> directly asking the petitioner questions concerning his convictions, in
> contradiction of Rule of Evidence 42 Pa.C.S. § 5918 and this honorable Court's
> ruling in *Commonwealth v. Garcia*, 551 Pa. 616, 712 A.2d 746 (1998)?[4]

On December 30, 2005, leave to appeal was denied.[5]

On March 31, 2006, Brookins filed a post-conviction petition. That petition was

dismissed on March 20, 2007, and an appeal was filed in which the issues raised were:

---

[1] See: Petition at ¶¶ 1-7 of the petition and the answer of the Commonwealth.

[2] See: Exhibit 5 to the answer of the Commonwealth.

[3] See: Exhibit 6 to the answer of the Commonwealth.

[4] See: Exhibit 8 to the answer of the Commonwealth.

[5] See: Exhibit 7 to the answer of the Commonwealth.

    1.  Whether trial counsel gave ineffective assistance for failing to argue that the evidence was insufficient to support the crime of possession of a firearm without a license?

    2. Whether appellate counsel gave ineffective assistance for failing to argue that the court erred in instructing the jury as to Appellant's flight?[6]

On June 25, 2008, the denial of post-conviction relief was affirmed.[7] An application for

allowance of appeal to the Pennsylvania Supreme Court was filed in which these same issues

were raised.[8] On November 5, 2008, leave to appeal was denied.[9]

    The background for this prosecution is set forth in the June 24, 2005 Memorandum of the

Superior Court:

> On February 20, 2002, local police went to Appellant's residence ... to execute a search warrant and two bench warrants for Appellant's arrest. Upon arriving at the residence, an officer saw Appellant at the front door before it slammed shut. The police knocked and announced and then they forced entry and proceeded to the third floor of the residence.  Appellant had escaped out a window and was on the roof of [a neighboring house]. He was armed but then set the gun aside shortly after the police officer stepped out onto the roof [of his residence]. Several officers attempted to negotiate with Appellant, but all were unsuccessful. Appellant held the police at bay for several hours.  During that time, Appellant spoke on his cell phone and interacted with the crowd that had gathered on the street.
>
>  Eventually, Dom Costa, commander of the Zone 6 police station and a trained negotiator, arrived on the scene. He was able to coax Appellant back into [his residence] for the purpose of surrendering. After Commander Costa had assured Appellant that the third floor of the residence was cleared of police, Appellant re-entered through a bedroom window at the back of the house and moved, along with Commander Costa, to a living room at the front of the house. Appellant

---

[6] See: Exhibit 12 to the answer of the Commonwealth.

[7] See: Exhibit 14 to the answer of the Commonwealth.

[8] See; Exhibit 16 to the answer of the Commonwealth.

[9] See: Exhibit 15 to the answer of the Commonwealth.

opened a window and discovered that SWAT members were in position on the ledge outside the third floor window. He slammed the window shut and then retreated into a corner of the living room. In quick succession, SWAT members entered the living room from the stairwell to search and arrest Appellant; Commander Costa turned to leave the living room; Appellant pulled a revolver and fired several shots in the direction of the police, hitting Commander Costa in the back of the shoulder and SWAT member Heurbin twice in the chest. SWAT member Knapp, who had entered the room behind Officer Heurbin, returned fire, hitting Appellant several times.

Two other officers attended to Appellant, finding a .38 caliber Rossi revolver underneath him. The officers patted down Appellant and handcuffed him. During the pat-down, one of the officers recovered a cloth Crown Royal bag containing bullets and a magazine from the pocket of Appellant's baggy pants. According to Dr. Robert Levine, a criminalist at the Allegheny County Coroner's Office and an expert in firearms, the two bullets retrieved from Officer Heurbin's bulletproof vest were discharged by the .38 caliber Rossi revolver found beneath Appellant.[10]

The instant petition was executed on July 9, 2009 and in it, Brookins contends he is

entitled to relief on the following grounds:

1. Whether it was reversible error for the trial court to permit the Commonwealth to impeach his credibility with evidence of his prior criminal activity.

2. Whether the trial court committed reversible error by instructing the jury that it could accept above prior criminal record as evidence of prior crimes to consider his credibility as trial witnesses?

3. [ Left blank]

4. Whether petitioner is held in violation of the due process clause § 1 of the 14th amendment and the 5th amendment, of no warrant shall issue but upon probable cause supported by oath or affirmation of the 4th amendment and of fair trial of the 6th amendment of the U.S. Constitution for the courts lack of jurisdiction to prosecute petitioner?

5. Whether petitioner was convicted and held in violation of the due process clause and of the law equal protection of the law the right to speech, expression, petition and litigation of the full panoply of guaranteed protections of the privileges and /or immunities clause of the U.S. Const. Art. IV §2, cl.1 and

---

[10] See: Exhibit 6 to the answer of the Commonwealth at pp.1-3.

amend.14 § 1 and the 14th, 1st, 4th, 6th, 8th and 9th amendments of the U.S.
Constitution where the courts lost jurisdiction for violating petitioner's rights,
making the judgment null and void.

6. Whether petitioner was convicted and held in violation of the right to a fair
speedy public and impartial trial, the due process clause and of the law, equal
protection of the law, the right to speech, expression, petition, and immunities
clause of the U.S. Const. Art. IV § 2 cl1 and the amend. 14 § 1 and the 14th, 1st,
4th, 5th, 6th, 8th, and 9th amendments of the U.S. Constitution. Where petitioner
is deprived of liberty by the state and its prosecuting officers, investigators, police
officers, and defense attorneys, deliberate use of false and perjured testimony and
evidence, and their failure to provide a corrective judicial process to correct it
once discovered. Where the courts lost jurisdiction for violating petitioner's rights
making the judgment null and void.

7. Whether petitioner was convicted and held in violation of his right to adequate
effective and meaningful trial counseled representation the right to a fair, speedy,
public and impartial trial, the due process clause and of the law, equal protection
of the law, the right to speech expression, petition and litigation, the full panoply
of guaranteed protections of the privileges and or immunities clause of the
U.S.Const. Art. IV § 2, cl.1 and amend 14, §. 1 and the 14th, 1st, 4th, 5th, 6th, 8th
and 9th amendments of the U.S. Constitution, by the constructive denial of trail
counsel. Where the courts lost jurisdiction for violating petitioner's rights to
counsel, making the judgment null and void.

8. Whether petitioner was convicted and held in violation of the full panoply of
guaranteed protections of the due process clause and the due process clause and
due process of the law, the first amendment, and litigation the full panoply of
guaranteed the privileges and/or immunities clause of the U.S.Const. Art. IV §2,
claimant. 1and amend. 14, § 1, and the 14th, 1st, 4th, 5th, 6th, 8th and 9th
amendments of the U.S. Constitution, where the courts lost jurisdiction for
violating petitioner's rights to be free, the abuse of the states government power
and the interference with petitioner's federal rights and the federal government,
also to be free from arbitrary, criminal and outrageous conduct, misconduct and
obstruction of justice, and withholding exculpatory evidence and evidence of
public and police corruption and crimes, making the judgment of the court null
and void, before appeal and reversal.

9. Whether petitioner was convicted and held in the denial of and in violation of
his rights to a fair public open and impartial trial and the full panoply of
guaranteed protections of the due process clause and due process of the law, the
first amendment, the privileges and/or immunities clause of the U.S.Const. Art.
IV, § 2, cl.1. and amend 14 § 1 and the 14th, 1st, 4th, 5th, 6th, 8th, and 9th

amendments of the U.S. Constitution by (2) counts of arbitrary government action and crimes, prosecutor and attorney misconduct, (1) in a cover up to deny petitioner access to the court and (2) in perpetrating a fraud upon the court.

10. Whether petitioner was convicted and held in the denial of, and in violation of his rights to a fair public open and impartial trial to testify, call witnesses, present evidence and the full panoply of guaranteed protections of the due process clause and due process of the law, the first amendment, the 14, § 1 and the 14th, 1st, 4th, 5th, 6th, 8th and 9th amendments of the U.S. Constitution and his civil rights under the Civil Rights Acts of 1866 et seq/ et al/ etc, 18 U.S.C. §sec 371-241, 242, 245 and 371 by arbitrary government action misconduct and commission of crimes.

11. Whether petition was convicted and held in the denial of and in violation of his rights to trial counsel, a fair public open and impartial trial to testify, call witnesses, present evidence and the full panoply of guaranteed protections of the due process clause and due process of the law, the first amendment, the privileges and/or immunities clause of the U.S.Const. Act. IV, §2, claimant. 1 and amend. 14 § 1, and the 14th, 1st, 4th, 5th, 6th, 8th and 9th amendments of the U.S. Constitution and his civil rights under the Civil Rights Acts of 1866 et seq/ et al/etc. 18 U.S.C. §§ 371-241, 242, 245 and 371 by constructive denial of counsel, abandonment of counsel, conflict of interest counsel, denial of counsel.

12. Whether petitioner was convicted and held in the denial of and violation of his rights to direct appeal, appeal counsel and his right to due process by post-conviction relief act/PCRA counsel and a fair public open and impartial trial to testify, call witnesses, present evidence and the full panoply of guaranteed protections of the due process clause and due process of the law, the first amendment, the privileges and/or immunities clause of the U.S. Const. Art IV, § 2, cl.1. and amend. 14 § 1 and the 14th, 1st, 4th, 5th, 6th, 8th and 9th amendments of the U.S. Constitution, and his civil rights under the Civil Rights Acts of 1866 et seq/et al/etc. 18 U.S.C. §§ 371-241, 242, 245 and 371 by constructive denial of counsel, abandonment of counsel, conflict of interest counsel or denial of counsel and/or ineffective assistance of counsel.

13. Whether petitioner was convicted and held in the denial of and in violation of his rights to an impartial judge and jury in a fair public open and impartial trial to testify, call witnesses, present evidence and the full panoply of guaranteed protections of the due process clause and due process of the law, the first amendment, the privileges and/or immunities clause of the U.S. Const. Art. IV § 2 claimant. 1 and amend. 14 § 1, and the 14th, 1st, 4th, 5th, 6th, 8th, and 9th amendments of the U.S. Constitution and his civil rights under the Civil Rights Acts of 1866 et seq/et al/etc, 18 U.S.. §§ 371-241, 242, 245 and 371.

It is provided in 28 U.S.C. §2254(b) that:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v.  30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir.  1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United

7

States." Under the "contrary to" clause, a federal habeas court may grant the writ
if the state court arrives at a conclusion opposite to that reached by this Court on a
question of law or if the state court decides a case differently than this Court has
on a set of materially indistinguishable facts. Under the "unreasonable
application" clause, a federal habeas court may grant the writ if the state court
identifies the correct governing legal principle from this Court's decisions but
unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a
federal habeas court may grant the writ if the state court arrives at a conclusion
opposite to that reached by [the Supreme] Court on a question of law or if the
state court decides a case differently than this Court has on a set of materially
indistinguishable facts." Williams v. Taylor, further held that "[u]nder the
'unreasonable application' clause, a federal habeas court may grant the writ if the
state court identifies the correct legal principle from [the Supreme] Court's
decisions but unreasonably applies that principle to the facts of the prisoner's
case." The "unreasonable application" inquiry requires the habeas court to "ask
whether the state court's application of clearly established federal law was
objectively unreasonable." Thus, under the "unreasonable application" clause, "a
federal habeas court may not issue the writ simply because that court concludes in
its independent judgment that the relevant state-court decision applied clearly
established federal law erroneously or incorrectly. Rather, that application must
also be unreasonable."  The Court in Williams v. Taylor made it clear that the
"contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, the first two issues which the petitioner seeks to raise here, that is

whether the trial court committed reversible error in permitting the Commonwealth to impeach

the petitioner's credibility regarding his knowledge of the existence of an outstanding warrant for

his arrest, thereby bringing his prior criminal record into evidence, and his claim that that

evidence could be used in accessing his credibility, were presented to the state appellate courts in

the context of violations of the Pennsylvania Rules of Evidence.[11] In addition, these issues were

---

[11] See: Exhibit 5 to the answer of the Commonwealth at pp.13-17.

reviewed by the Superior Court as matters of state law.[12]

In O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999), the Court held, "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve *federal constitutional claims* before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues ..." (Emphasis added).  See also: Baldwin v. Reese, 541 U.S. 26, 32 (2004)("a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief..."); Holloway v. Horn, 355 F.3d 707 (3d Cir.) cert. denied 543 U.S. 976 (2004). Thus, these issues do not present a basis for relief here.

The remaining issues which the petitioner seeks to present here have never been raised in the state court proceedings.[13] As set forth above the first two issues were only presented in his direct appeal and the allegations in the post-conviction petitioner concerning the alleged ineffectiveness of counsel were raised on very narrow grounds and not in the context in which it is raised here.[14]

In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas

---

[12] See: Exhibit 6 to the answer of the Commonwealth.

[13] We note that although the petitioner seeks to clothe these issues in the context of a barrage of federal constitutional and statutory issues, they all come down to alleged violations of due process and a fair trial in the state courts.

[14] We also observe that the latter appeal was set forth solely in terms of alleged violations of Pennsylvania statute and case law with the exception of a passing reference to Strickland v. Washington, 566 U.S. 668 (1984). The Pennsylvania Superior Court also considered the appeal exclusively on the basis of Pennsylvania law (Exhibit 14 to the answer).

9

review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Because there is no possible showing of a possible miscarriage of justice, the petitioner has defaulted the available state court remedies and for this reason, he is barred from raising the remaining issues here.

Although we conclude that the petitioner clearly failed to raise the allegations of the ineffective assistance of counsel other than a passing reference to Strickland in the post-conviction proceedings, we briefly examine these claims and conclude that like the rest of the allegations, they are meritless.

In Strickland v. Washington, supra., the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See

Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987).  As a result, if a petitioner fails on either prong, he loses.  Holladay v. Haley, 209 F.3d 1243, 1248 (11th  2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citation omitted);  Foster v. Ward, 182 F.3d 1177, 1184 (10th  Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.")

In this regard in his seventh claim, the petitioner alleges that counsel was ineffective for failing to secure an expert to review the sixteen bullet hole in his body; in his eleventh issue he claims to have been abandoned by counsel and indicates that counsel had a conflict in representing him, and in his twelfth issue he challenges the effectiveness of appellate and post-conviction counsel. There are no factual supports set forth for any of these allegations nor can we discern any. Rather, the allegations demonstrate the shot-gun approach of these entire petition in that by making a myriad of unsubstantiated claims, the petitioner hopes that one shot might unearth some support for his meritless petition. See: Simms v. Carroll, 432 F.Supp.2d 443 (D.Del. 2006). Thus, there is no demonstration of a deficient performance by counsel.

As we noted above, in his appeal from the denial of post-conviction relief the petitioner raised substantive claims of ineffectiveness of counsel by claiming that counsel failed to argue the sufficiency of the evidence to support a conviction of possession of a firearm without a license and failed to challenge the trial court's instruction regarding inferences from the

petitioner's flight.[15]  None of these claims are raised here.

Accordingly, because the petitioner has either failed to raise his federal claims in state court or has defaulted on the available state court remedies, it is recommended that the petition of Cecil Brookins for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Within the time limits set forth in the attached notice of electronic filing, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell,
Entered: March 11, 2010                          United States Magistrate Judge

---

[15] See: Above at p.3 and Exhibit 12 to the answer of the Commonwealth.

12